## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  JASON WILLIAM YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.    20-cv-242-RAW |
| (1) OKMULGEE COUNTY CRIMINAL | ) | |
| JUSTICE AUTHORITY, a public trust, | ) | |
| (2) OKMULGEE BOARD OF COUNTY | ) | |
| COMMISSIONERS, | ) | |
| (3) SAM MCCOY, | ) | ATTORNEY LIEN CLAIMED |
| (4) RONALD SPEARS, | ) | JURY TRIAL DEMANDED |
| (5) Does I through X, | ) | |
| | ) | |
| Defendants, | ) | |

### COMPLAINT

**COMES NOW** the Plaintiff, Jason Young ("Plaintiff"), and for his Complaint against Defendants, alleges and states as follows:

### JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 29 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

2.      The Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C § 1983.

3.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Paragraphs 1-3 are incorporated herein by reference.

5.      Plaintiff Jason William Young is a resident of Okmulgee County, State of Oklahoma.

6.      Defendant Okmulgee County Criminal Justice Authority ("OCCJA") is a public trust created pursuant to 60 Okla. Stat. §176, *et seq*., organized to operate the Okmulgee County Jail ("the Jail").  OCCJA was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Jail.  In addition, OCCJA along with the Board of County Commissioners of Okmulgee County is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Jail, including the policies, practices, procedures, and/or customs which led to violations of Mr. Young's Constitutional rights as set forth in this Complaint.

7.      Defendant, The Board of County Commissioners of Okmulgee County, Oklahoma ("BOCC"), is a statutorily-created governmental entity. 57 Okla. Stat. § 41 provides that "[e]very county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." BOCC must discharge its responsibilities of operation and maintenance of the Jail to the OCCJA in a constitutional manner.

8.      Defendant, Sam McCoy, was at all times relevant hereto, the duly appointed executive director for the OCCJA in charge of the operations and supervision of the Jail

and the individuals in his custody.  During the acts and omissions complained of herein, he was acting in such capacity as the agent, servant and employee of the Okmulgee County Criminal Justice Authority. Sam McCoy is sued individually and in his official capacity.

9.      Defendant Ronald Spears was at all times relevant hereto, the duly appointed Jail administrator employed by the OCCJA in charge of the operations and supervision of the Jail and the individuals in his custody.  During the acts and omissions complained herein, he was acting in such capacity as the agent, servant and employee of the OCCJA. Ronald Spears is sued individually and in his official capacity.

10.      The true names and identities of Defendants DOES 1 through X are presently unknown to Plaintiff.  Plaintiff alleges that each of Defendants DOES I through X was employed by the OCCJA and/or BOCC. Plaintiff alleges that each of Defendants DOES I through X was deliberatively indifferent to Mr. Young's medical needs, and safety, violated his civil rights, negligently and wrongfully caused his injuries, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

## FACTUAL ALLEGATIONS

### THE ASSAULT ON MR. YOUNG

11.      Paragraphs 1-10 are incorporated herein by reference.

12.      On or about August 9, 2018, Mr. Young was booked into the Jail. At the time of his booking, Mr. Young was placed into a pod at the Jail with dozens of other inmates.

13.      On or about August 13, 2018, Plaintiff was removed from the Jail and transported for a court hearing.

14.     Unbeknownst to Mr. Young, on August 13, 2018, while he was away from the Jail, Jail staff performed a search of the pod where Mr. Young was being held. The other inmates that were in the pod assumed that the search was being performed in response to some unknown information that Mr. Young mist have provided to Jail staff.

15.     Upon Mr. Young's return from court, Mr. Young was advised by a fellow inmate that numerous inmates were planning an attack on him.

16.     Plaintiff advised Jail Staff on duty that he had been told that the other inmates believed Mr. Young was a "snitch" and that he was being targeted by many of the other inmates. Mr. Young explained to Jail Staff that he was going to be "jumped," i.e., assaulted by these inmates.

17.     Mr. Young explained to the Jail staff that he was fearful for his life and **begged** the Jail employees to put him into another Jail cell/pod to keep him from being attacked by the other inmates.

18.      Jail staff ignored Mr. Young's pleas for help and took **no** precautions whatsoever to protect him. Instead, Jail staff placed Mr. Young back into the general population of the Jail pod.

19.     At approximately 2:00 p.m., just minutes after being placed back into the Jail pod, Mr. Young was in fact assaulted and savagely beaten by inmates. The assault took place **in front of Jail staff**, who took no action to stop or prevent it.

20.     As a result of the violent attack, Mr. Young was rendered unconscious, bloody, and in serious pain.

21.     Emergency room physicians diagnosed Mr. Young with head injury, concussion, intracranial hemorrhage, skull fracture, abrasion, hematoma, and lacerations.

Furthermore, medical staff placed seven (7) sutures in Mr. Young's forehead and three (3) sutures in his eyebrow.

22.     In addition to the physical injuries, Plaintiff also suffered emotional and mental pain and anguish as a result of the assault.

23.     Plaintiff was knowingly and deliberately targeted for assault and then brutally beaten by inmates, while deputies and supervisors at the Jail, sat by and knowingly and deliberately failed to protect Plaintiff, in violation of his constitutionally protected rights.

24.     The assault and corresponding injuries to Mr. Young were the direct result of a total and complete failure in supervision, security and housing within the Jail and the promulgation of unconstitutional policies as set forth hereto.

**THE JAIL'S UNCONSTITUTIONAL POLICIES OF UNDERSTAFFING, UNDERFUNDING, AND OVERCROWDING**

25.     The Defendants' deliberate indifference to Mr. Young's safety, health and serious medical needs was in furtherance of and consistent with policies, procedures, customs and/or patterns which OCCJA and/or BOCC promulgated, created, implemented or possessed responsibility for.

26.     There are longstanding systematic deficiencies in both the number of employees staffed by the Jail as well as the training and supervision of those employees. Both Sam McCoy and Ronald Spears have long known of these systematic deficiencies and the substantial risks they pose to inmates like Mr. Young but failed to take reasonable steps to alleviate those deficiencies and risks.

27.     The lack of employees on duty at any given time causes the staff to be deliberately indifferent to inmates' needs either by custom or practice.

28.     Defendants OCCJA and BOCC maintained a policy, practice, and/or custom of understaffing the Jail, which poses known, obvious and excessive risks to the health and safety of inmates like Mr. Young

29.     There is a longstanding policy, practice, or custom at the Jail of attempting to reduce overhead costs by not hiring adequate, Jail staff, and then failing to provide the education and supervision necessary for Jail staff. Furthermore, there is a longstanding policy, practice or custom of housing far more inmates than the Jail can reasonably accommodate, purely for financial purposes.

30.     The combination of overcrowding and understaffing has resulted in unsafe and inhumane living conditions at the Jail. The amount of inmates housed in the Jail combined with a lack of Jail staff, leaves inmates, like Mr. Young, vulnerable and at risk.

31.     In response to the overcrowding at the Jail, in 2014 Jail inmates **rioted** causing over **$10,000** worth of damage to the Jail. John Martin, the Jail Director blamed the riot on extreme overcrowding. When specifically discussing the overcrowding problem, Martin stated that the Jail was originally built for 154 inmates, and, was approved for 226 inmates, but as of September 2014, housed **323** inmates. More than **double** what the Jail was built to house.

32.     In 2017, Okmulgee County District Attorney Rob Barris stated that the overcrowding issue was so horrific that "[s]everal times, the Jail inspector had indicated if the issue was not corrected, the county would face fines and other sanctions which could cost the taxpayers tens of thousands of dollars and possibly result in the closure of the Jail or the release of numerous inmates from custody back into our communities. This

situation, left unchecked, constituted a threat to public safety and represented a major

financial burden for the County."

33.     To remedy the overpopulation  issues in the Jail, Okmulgee residents voted

to build a $7 million Jail annex that was completed in January of 2017.

34.     Defendant Sam McCoy gave an interview in July of 2017 stating that the

Jail annex was built specifically to remedy overpopulation and to avoid state sanctions. In

that interview, Defendant McCoy stated that in order to pay for the operation of the Jail,

the OCCJA had reached out to the United States Immigration and Custom Enforcement

Agency ("ICE") to hold ICE prisoners. Without the ICE contract, McCoy stated that

Okmulgee would "have a fancy new vacant building and the current facility we built 16

years ago would continue to be massively overcrowded, and we'd be under threat of

administrative sanctions."

35.     The new Jail annex has since been turned into a wing reserved **exclusively**

for ICE prisoners. **Thus, the added space has done nothing in the way of alleviating**

**the overcrowding issues that plague the Jail.**

36.     Due to the clear lack of funding available at the Jail, the OCCJA and/or

BOCC have made intentional and concerted efforts to increase the number of inmates

being housed at the Jail in order to increase the amount of operating capital for the Jail.

37.     In conjunction with attempts at increasing funding for the Jail, the OCCJA

and/or the BOCC have made intentional and concerted efforts to reduce the expenses at

the Jail.

38.     To reduce the overhead costs at the Jail, OCCJA and BOCC implemented

policies, procedures, customs, or practices to reduce labor costs, including not fully

staffing the Jail in a manner commensurate to the number of inmates and failing to provide supervision for poorly trained staff to protect inmates' rights.

39.     To further reduce the overhead costs at the Jail, Defendants OCCJA and BOCC failed and refused to adequately train Jail personnel and staff with respect to the proper assessment, protection, and de-escalation of situations that are inherently violent or dangerous to inmates. This failure to train constitutes deliberate indifference to the health and safety of inmates like Mr. Young.

40.     The combination of attempting to increase funding by housing far more inmates than is reasonable and attempting to cut costs by employing as few Jail staff as possible has resulted in an extremely dangerous situations for inmates like Mr. Young.

41.     Defendants OCCJA and BOCC are, and have been, on notice that their policies, practices, and/or customs are inadequate to ensure the safety and protection of inmates like Mr. Young. Nonetheless, OCCJA and BOCC have failed to reform those policies practices and/or customs.

42.     In the wake of the well documented deficiencies at the Jail, Defendants Sam McCoy and Ronald Spears have made no meaningful improvements in the training, staffing, and/or supervision of Jail staff.

43.     Defendants Sam McCoy and Ronald Spears were on notice that the policy of seeking to cut costs was resulting in a lack of trained Jail employees and placed inmates like Mr. Young at excessive risk of harm. However, Defendants Sam McCoy and Ronald Spears failed to alleviate the known and obvious risks in deliberate indifference to the rights of inmates like Mr. Young.

**CAUSES OF ACTION**

## I. VIOLATION OF MR. YOUNG'S CIVIL RIGHTS ARISING UNDER THE FOURTEENTH AND/OR EIGHTH AMENDMENT
### (42 U.S.C. § 1983)

44.     Paragraphs 1 - 43 are incorporated herein by reference.

45.     There is a special-relationship between the State and an individual in situations where the state imposes limitations upon an individual's freedom to act on his or her own behalf.

46.     The State's affirmative act of restraining an individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—is a 'deprivation of liberty' triggering the protections of the Due Process Clause of the 14th Amendment of the U.S. Constitution.

47.     Here, due to his being incarcerated, Mr. Young was placed under the care and supervision of the Defendants.

48.     Under the circumstances, Jail staff, specifically the John Doe Defendants, had an affirmative duty to protect Mr. Young based upon the limitations which the state had imposed on his freedom to act on his own behalf.

49.     Knowing that Mr. Young was at substantial risk of serious harm, Jail staff, including the John Doe Defendants, deliberately ignored the substantial risk to Plaintiff's personal health and safety.

50.     Indeed, Jail staff, specifically the John Doe Defendants, enhanced and/or created the aforementioned dangers, when they placed Plaintiff into the holding cell with the knowledge that the Jail inmates were planning an attack on Plaintiff.

51.     The John Doe Defendants' conduct, as described herein, put Mr. Young at substantial risk of serious, immediate, and proximate harm.

52.     The risks to Mr. Young were obvious or known.

53.     During the constitutional violations committed described above, Jail staff, specifically the John Doe Defendants stood by without intervening to protect Mr. Young and to prevent the violations of his constitutional rights, even though they had the duty and opportunity to do so.

54.     These Defendants had a reasonable opportunity to prevent this harm but failed to do so.

55.     The John Doe Defendants acted recklessly or in conscious disregard of those risks.

56.     When viewed in total, the John Doe Defendants' conduct "shocks the conscience."

57.     The John Doe Defendants' violations of Mr. Young's Constitutional rights were a proximate cause of Mr. Young's injuries, including physical and mental pain and suffering, and the damages alleged herein.

58.     The misconduct described in this Claim for Relief was objectively unreasonable and was undertaken intentionally, with malice, and/or willful and/or reckless indifference to Mr. Young's Constitutional rights

### II. Municipal/ Monnell Liability (As to Defendants OCCJA and BOCC)

59.     Paragraphs 1-58 are incorporated herein by reference.

60.     OCCJA and/or BOCC are a "person" for the purposes of 42 U.S.C. §1983.

61.     There is an affirmative causal link between the aforementioned acts and/or omissions of Jail staff in failing to protect and/or intervene as Mr. Young was brutally assaulted by fellow inmates, and the above-described customs, policies, and/or practices of housing far more inmates than the Jail can reasonably accommodate and staffing the Jail with far less employees than is necessary. (See, e.g., ¶¶ 25-43, *supra*).

62.     OCCJA and/or BOCC knew or should have known, either through actual or constructive knowledge, or it was obvious that these policies, practices and/or customs posed substantial risks to the health and safety of inmates like Mr. Young. Nevertheless, OCCJA and/or BOCC failed to take reasonable steps to alleviate those risks, in deliberate indifference to inmates', including Mr. Young's, health and safety.

63.     OCCJA and/or BOCC tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein.

64.     As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Young experienced physical pain, severe emotional distress, mental anguish, and other damages alleged herein.

**III. Supervisory Liability (As to Defendants Sam McCoy and Ronald Spears)**

65.     Paragraphs 1-64 are incorporated herein by reference.

66.     There is an affirmative causal link between the aforementioned acts and/or omissions of Jail staff in failing to protect and/or intervene as Mr. Young was brutally assaulted by fellow inmates, and the above-described customs, policies, and/or practices that were adopted, promulgated and implemented by Defendants McCoy and/or Spears. (See, e.g., ¶¶ 25-43, *supra*).

67.     In adopting, promulgating and implementing the policies and pracives described herein, Defendants McCoy and/or Spears disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Young

68.     Defendants McCoy and/or Spears knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Young. Nevertheless, Defendants McCoy and/or Spears failed to take reasonable steps to alleviate those risks in deliberate indifference to inmates', including Mr. Young's, health and safety.

69.     Defendants McCoy and/or Spears tacitly encouraged, ratified, and/or approved the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers.

70.     There is an affirmative link between the unconstitutional acts of their subordinates and Defendants McCoy's and/or Spears' adoption and/or maintenance of the aforementioned policies, practices, and/or customs.

71.     Defendants McCoy and/or Spears are liable, in their personal capacity, for the aforementioned unconstitutional policies and customs.

72.     As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Young experienced physical pain, severe emotional distress, mental anguish, and other damages alleged herein.

### IV. Violation of Article II § 9 and Article II § 7 of the Constitution of the State of Oklahoma

73.     Paragraphs 1 to 72 are incorporated herein by reference.

74.     Under the Due Process Clause of the Oklahoma Constitution, Article II § 7, Mr. Young had rights at least as protective as his rights under the Fourteenth Amendment to the United States Constitution.

75.     There is a special-relationship between the state and an individual in situations where the state imposes limitations upon an individual's freedom to act on his or her own behalf.

76.     It is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause of the Oklahoma Constitution, not its failure to act to protect his liberty interests against harms inflicted by other means.

77.     Here, due to his incarceration, Mr. Young was placed under the supervision of the Defendants.

78.     Under the circumstances, the Defendants, had an affirmative duty to protect Mr. Young based upon the limitations which the state had imposed on his freedom to act on his own behalf.

79.     Despite their knowledge that Mr. Young was at substantial risk of serious harm, or despite the obvious risk of substantial harm that Mr. Young faced, the Defendants did nothing to alleviate those risk in deliberate indifference to Mr. Young's health and safety.

80.     Indeed, the Defendants enhanced and/or created the dangers, through their own affirmative conduct, as described *supra*.

81.     The Defendants' conduct, as described herein, put Mr. Young at substantial risk of serious, immediate, and proximate harm.

82.     The risks to Mr. Young were obvious or known.

83.     The Defendants acted recklessly or in conscious disregard of those risks.

84.     When viewed in total, the Defendants' conduct would "shock the conscience."

85.     The Defendants' violations of Mr. Young's rights, under the Oklahoma Constitution, were a proximate cause of Mr. Young's injuries, including physical and mental pain and suffering, death, and the damages alleged herein.

86.     During the constitutional violations committed described above, Jail staff, including the John Doe Defendants, stood by without intervening to protect Mr. Young and to prevent the violations of his constitutional rights, even though they had the duty and opportunity to do so.

87.     As a direct and proximate result of Jail staff's, including the John Doe Defendants', failure to intervene to protect Mr. Young a vulnerable inmate at the mercy of Jail staff, Mr. Young suffered the injuries and damages alleged herein. Defendants had a reasonable opportunity to prevent this harm but failed to do so.

88.     The misconduct described in this Claim for Relief was objectively unreasonable and was undertaken intentionally, with malice, and/or willful or reckless indifference to Mr. Young's Constitutional rights

89.     At all pertinent times, Jail staff, including the John Doe Defendants, were acting within the scope of their employment and, thus, OCCJA and/or BOCC are

vicariously liable for their violation of Mr. Young's rights under the Oklahoma Constitution.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant the relief sought, including, but not limited to, damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Respectfully submitted,

**SMOLEN LAW, PLLC**

/s/Donald Smolen, II_____
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John W. Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74119
(918) 777-4LAW (4529)
(918) 890-4529 (Fax)

*Attorneys for Plaintiff*